IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOUGLAS REAL,

     Plaintiff,                    No. CIV S-11-1821 GGH P

    vs.

JALAL SOLTANIAN-ZADEH, et al.,

     Defendants.             <u>ORDER</u>

_____/

        Plaintiff is a state prisoner proceeding pro se. He seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee in full. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Plaintiff has consented to the jurisdiction of the undersigned.

        Although plaintiff has paid the filing fee in full, he will be provided another opportunity to submit a declaration that makes the showing required by 28 U.S.C. § 1915(a).[1] Plaintiff will be afforded this opportunity because, should he be found qualified to proceed in forma pauperis and should any of his claims be colorable, the court can direct the U.S. Marshal

---

[1] Prior to paying the filing fee, plaintiff, by order filed on July 19, 2011, was directed to submit the appropriate affidavit in support of a request to proceed in forma pauperis or to submit the appropriate filing fee.

1

1  to serve process upon any defendant rather than plaintiff being responsible for service of process.
2  Of course, plaintiff, having paid the filing fee in full, even if found qualified to proceed in forma
3  pauperis, would not be assessed any further filing fee.
4        The court is required to screen complaints brought by prisoners seeking relief
5  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.
6  § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised
7  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be
8  granted, or that seek monetary relief from a defendant who is immune from such relief.  28
9  U.S.C. § 1915A(b)(1),(2).
10        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
11  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28
12  (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an
13  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
14  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
15  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th
16  Cir. 1989); Franklin, 745 F.2d at 1227.
17        A complaint must contain more than a "formulaic recitation of the elements of a
18  cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the
19  speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).
20  "The pleading must contain something more...than...a statement of facts that merely creates a
21  suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal
22  Practice and Procedure 1216, pp. 235-235 (3d ed. 2004).  "[A] complaint must contain sufficient
23  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft
24  v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127
25  S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content
26

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969).

Plaintiff names the following Mule Creek State Prison (MCSP) employees as defendants: Jalal Soltanian-Zadeh; Stephen Tseng; Christopher Smith; Scott Heatley; Karen Todd; A Kettlehake; L. Heffner; and M. Galloway.  Although plaintiff identifies "Levoconvex Idiopathic Rotary Scoliosis" as a diagnosis of one of his medical problems, the chief defect in plaintiff's allegations is that he fails to set forth specifically the treatment, or lack thereof, alleged against each defendant, and whether the conduct attributed to each defendant was related to the asserted diagnosis.   Instead, plaintiff seeks to implicate the defendants for a generalized failure to provide adequate medical care.  Plaintiff will be given an opportunity to amend his complaint. In this amended pleading, plaintiff should state specifically the medical problem which occasioned the doctor visit/treatment, and what, in plaintiff's opinion, was specifically done, or not done, which gives rise to a claim of deliberate indifference to a serious medical condition.

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

3

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

> A prison official acts with "deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation omitted). FN4 This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Farmer, 511 U.S. at 839, 114 S.Ct. 1970. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." McGuckin, 974 F.2d at 1059 (alteration and citation omitted).

4

> FN4. In a recent case, we recognized that "deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir.2003) (citations omitted); see also Gibson, 290 F.3d at 1197 (acknowledging that a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the obvious and extreme nature of a detainee's abnormal behavior). []

Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

Plaintiff makes very clear his dissatisfaction with the way MCSP has handled his medical complaints. He speaks of the alleged habit and practice of the California Department of Corrections and Rehabilitation (CDCR) to be deliberately indifferent to prisoners' medical needs. Plaintiff alleges that he submitted a request for medical services to defendant Kettlehake who responded with a document via institutional mail, without making a physical evaluation of plaintiff, telling plaintiff he would be seen in thirty days. Complaint, p. 5.[2] Thereafter, in November of 2010, a month after he had put in his request, plaintiff was seen by defendant Soltanian-Zadeh, his assigned physician, who, according to plaintiff showed no interest in listening to plaintiff's complaints and refused to review plaintiff's medical file, consider plaintiff's acute or chronic pain or base his diagnosis on relevant medical data. Id., at 6. Instead, plaintiff maintains, defendant Soltanian-Zadeh denied his claims "based on the arbitrary and capricious whims of the institutional environment at that time." Id. Plaintiff then goes on to aver that the medical treatment an inmate receives in CDCR is a result of "the complete collusion and indifference that can and usually does occur within a closed and shielded environment." Id., at 7.

Plaintiff then presents his version of the medical complaint process, faulting defendant Tseng for addressing "everything but the plaintiff's physical problems/conditions." Complaint, p. 8. Plaintiff states that defendant Tseng noted that the damage to plaintiff's spine had increased from 15 degrees in 1997 to 21 degrees at the present time but then referred to the standard of care being "quite broad," allowing for "different physicians to practice in their own style." Id., at 8. Plaintiff questions whether this response means that no constitutional standards apply. Plaintiff then asserts that defendant Tseng, completely at odds with his own findings and the medical evidence, then favors defendant Zadeh's position. Id., at 9. Plaintiff then avers that that is not his chief complaint in the instant action, but that his complaint is much broader. Id. Plaintiff seeks to implicate, inter alia, how staff reviews complaints and contends that defendant

---

[2] The electronic pagination of the court's docketing system is referenced.

1  Tseng "colluded with" defendant Zadeh with regard to plaintiff's treatment based not on
2  plaintiff's actual medical needs (which plaintiff never spells out) but rather to meet
3  administrative demands.  Id.
4        Plaintiff then moves on to the pain management committee (PMC) and/or medical
5  authorization review committee (MARC), which plaintiff contends contains inherent conflicts of
6  interest, in that these committees are entirely comprised of MCSP prison staff and supervising
7  doctors, resulting in the same doctors who gave patients certain care themselves later denying
8  those patients that care based on one of several reasons, such as the inmate abuses a medication
9  or is not taking it as directed; the inmate is selling the medication; the medication is no longer
10 prescribed or is no longer needed based on medical evidence.  Complaint, p. 10.  Plaintiff avers
11 that such daily "excuses" do not apply to him and he wishes to stop "this type of behavior" for all
12 inmates.  Id.  Plaintiff alleges that defendants Smith, Heatley, Todd and Galloway are all PMC
13 members and that the PMC and MARC retain only MCSP in-house doctors beholden to the
14 prison that hired them.  Id., at 11.  Perhaps perceiving that he is going far afield of setting forth a
15 specific claim of deliberate indifference to a serious medical need of his own, plaintiff alleges
16 broadly that each individual he has named has had direct involvement in being deliberately
17 indifferent to his medical needs.  Id.  He claims that each has denied him pain medication
18 without medical or legal justification and that he was referred for drug abuse screening with no
19 history of narcotics abuse.  Id., at 11-12.
20       Although plaintiff does not is set forth the factual predicate for his current claim,
21 he does recount his history of having been diagnosed, in January of 1997, with "'Leconovex
22 Idiopathic Rotatory Scoliosis,'" of having been diagnosed in December of 2000 with a 5/8th inch
23 shortening of his left leg, and of having been, at some point, prescribed a prosthetic boot lift.
24 Complaint, p. 13.  Plaintiff alleges that it should be obvious that his injuries have exacerbated
25 over time and his level of suffering increased.  Id.  Plaintiff then goes on to claim that CDCR's
26 claim that they police their doctors for the care provided is false.  Id.  He alleges that CDCR

1   habitually cites irrelevant excerpts of CAL. CODE REGS. tit.xv to rationalize denying inmates
2   treatment.  Id.  Plaintiff faults defendant Heffner, a chief executive officer of PMC/MARC, for
3   having declined a staff complaint against defendant Zadeh because it did not meet staff
4   complaint requirements, criterria which has not been set forth by staff.  Id., at 14.  Regarding
5   himself, plaintiff claims that defendant Hefner's having asserted in response to a complaint
6   plaintiff made against defendant Zadeh that he reviewed plaintiff's medical file was a false one,
7   apparently because Hefner sent plaintiff medical documents that belonged to someone other than
8   plaintiff.  Id., at 15.  Plaintiff claims that a follow-up appointment defendant Hefner noted with
9   respect to defendant Tseng was disingenous inasmuch as the appointment's purpose was to deal
10  with plaintiff's appeal but not to care for plaintiff's medical needs.  Id., at 15-16.  (This appears
11  to be something of a distinction without a difference to the court if the appeal was regarding
12  plaintiff's medical needs).  Plaintiff identifies defendant Hefner as the chief medical officer and
13  avers that his partially granting plaintiff's appeal to see a different doctor was "a red herring" and
14  that he, as CMO, could have resolved plaintiff's needs.

15          The generic nature of plaintiff's allegations is problematic.  Plaintiff seeks to
16  implicate the allegedly deficient policies and procedures of inmate medical care at MCSP, but
17  this is not a class action and plaintiff, as an individual, does not have standing to assert a
18  violation of the rights of any other inmate.  Halet v. Wend Inv. Co., 672 F.2d 1305, 1308 (9th
19  Cir. 1982) (party must assert [his] own rights not those of third parties), citing Duke Power Co.
20  v. Carolina Environmental Study Group, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634 (1978); Warth v.
21  Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205 (1974).  To the extent that he claims to be a
22  victim of unconstitutional practices or policies, plaintiff must set forth the precise claim for
23  which he alleges these defendants have shown deliberate indifference.  Plaintiff must state
24  specifically the medical treatment he sought, when he sought it, and how each defendant was
25  involved in subjecting him to deliberate indifference to a serious medical need.  Generic
26  complaints of prison health care deficiencies do not frame a claim.

In addition, the gravamen of his complaint against a number of the defendants appears to be plaintiff's dissatisfaction with responses to his appeals (and those of other inmates). Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991). Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). Specifically, a failure to process a grievance does not state a constitutional violation. Buckley, supra. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).[3] Plaintiff's due process claims against these defendants will be dismissed but plaintiff will be granted leave to amend.

Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed

---

[3] "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989). "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980). "Without proximate cause, there is no § 1983 liability." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

> The search, which was performed in accordance with this constitutionally valid strip search policy, was subsequently ratified by the School Board when Mr. Williams filed a grievance. Therefore, Williams' only grasp at evoking municipal liability under § 1983 is to show that this subsequent ratification is sufficient to establish the necessary causation requirements. Based on the facts, the Board believed Ellington and his colleagues were justified in conducting the search of Williams. There was no history that the policy had been repeatedly or even sporadically misapplied by school board officials in the past. Consequently, the School Board cannot be held liable for the ratification of the search in question, because this single, isolated decision can hardly constitute the "moving force" behind the alleged constitutional deprivation.

Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).

This court is unwilling to adopt a rule that anyone involved in adjudicating grievances after the fact is per se potentially liable under a ratification theory. However, this is not to say that persons involved in adjudicating administrative disputes, or persons to whom complaints are sometimes made can never be liable under a ratification theory. If, for example, a reviewing official's rejections of administrative grievances can be construed as an automatic whitewash, which may have led other prison officials to have no concern of ever being reprimanded, a ratifying official may be liable for having put a defective policy in place.

////

1 Plaintiff has not set forth sufficient, specific facts with regard to these defendants sufficient to suggest that they are liable to him under a ratification theory, and they will be dismissed on that ground as well, but plaintiff will be given leave to amend.  For the reasons set forth above, the complaint, therefore, is dismissed but, as noted, with leave to amend.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff has paid the filing fee in full and will assessed no further filing fee; however, plaintiff will be granted an opportunity to submit, within twenty-eight days from the date of this order, an affidavit in support of a request proceed in forma pauperis on the form provided by the Clerk of Court.

////

2. The Clerk of the Court is directed to send plaintiff a new Application to Proceed In Forma Pauperis By a Prisoner.

3. The complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this order. Failure to file an amended complaint will result in dismissal of this action.

DATED: September 21, 2011

    /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:009
real1821.b