IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOUGLAS REAL,

    Plaintiff,                             No. CIV S-11-1821 GGH P

    vs.

JALAL SOLTANIAN-ZADEH, et al.,

    Defendants.                        ORDER

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. This court found plaintiff's first amended complaint, alleging deliberate indifference by defendants to plaintiff's serious medical condition in violation of his Eighth Amendment rights, appropriate for service upon the defendants on December 13, 2011 (docket # 11). By separate order, also filed on December 13, 2011 (docket # 12), the court, having construed plaintiff's December 12, 2012, motion for a preliminary injunction or TRO,[1] seeking relief from an allegedly imminent retaliatory transfer, as a motion for a protective order,[2] ordered

---

[1] Temporary restraining order.

[2] The undersigned clarified therein that where a motion seeking injunctive relief does not relate to the allegations of the complaint and does not seek an outcome that may be available in the action, it may be addressed by the magistrate judge. See Order, filed on December 13, 2012 (dkt # 12)

a response from the Attorney General and appropriate defendants within fourteen days.[3] The Office of the Attorney General filed its response on January 5, 2012.[4]

In his motion, plaintiff states that he was placed on a transfer list by Mule Creek State Prison (MCSP) staff as a form of retaliation evidently for the filing of the instant action. Motion, p. 1. Plaintiff alleges that he "very recently" had seen one of the defendants in this action for his medical condition, defendant Kettelhake, who stated "oh, I see that you['re] suing me," and shortly afterward plaintiff was put before a committee and placed on a transfer list from Mule Creek State Prison (MCSP). Id., at 2. Plaintiff contends that his immediate transfer will take him "hundreds of miles from this court, as well possible witnesses and documentary evidence." Id.   He also references a medical hardship as a reason for his being at MCSP, i.e., that he has close family ties in the area (20 minutes from MCSP) and that his father is blind. Id. Plaintiff includes a copy of a second level appeal response, dated February 16, 2005, wherein MCSP "granted in part" plaintiff's appeal to rescind his endorsement from MCSP to be transferred to Centinela State Prison.[5] Motion, Exhibit A. Plaintiff had argued that such placement put him 500 miles from the Bay Area and that his father was suffering from macular degeneration, causing travel difficulties. Id.   The Centinela endorsement was rescinded and plaintiff was endorsed, on Feb. 11, 2005, to MCSP SNY. Id.  Plaintiff also includes an unauthenticated copy of a Nov. 29, 2011, report from an ophthalmologist, located in Milpitas, CA, indicated that Mr. Carl Real has been legally blind since Nov., 2008 and that "[t]he condition is permanent" and not expected to improve. Motion, Ex. B.

---

[3] The court granted the Attorney General's Office an extension of time until January 6, 2012, by order, filed on January 3, 2012.

[4] The AG avers that no defendant has been served or asked for representation from the AG's office and that the response is a special appearance only, without waiver of service or any defects therein.

[5] The court previously noted that though plaintiff had neglected to sign a declaration under penalty of perjury, that he had included an exhibit which forms the basis for his claim that he was granted a hardship transfer to MCSP in 2005. See Order at dkt # 12.

In response, the Attorney General includes the declaration of L.B. Reaves, who states that he (or she) is a Correctional Counselor (CC) II Specialist at MCSP, responsible for managing the MCSP inmate population. Response, Reaves Dec. ¶ 1. Declarant Reaves avows that Governor Brown, on April 5, 2011, signed AB 109[6] into law, which reorganizes CDCR's operation fundamentally, requiring MCSP's reduction of the inmate population by 628. Id., at ¶ 2. According to a 128g chrono documenting plaintiff's recent appearance before the Unit Classification Committee (UCC) for his annual review on November 23, 2011, it was explained to plaintiff that, to implement AB 109, they were required to identify those inmates who met the criteria for transfer and that he met those criteria. Id., at ¶ 3 & Ex. A (copy of 128g chrono of plaintiff's Nov. 23, 2011, annual review before UCC.) Plaintiff was further informed that he would be referred "for a non-adverse and involuntary transfer" either to the Correctional Training Facility at Soledad or the California Substance Abuse Treatment Facility at Corcoran. Id. It is noted in the chrono that plaintiff was an active participant in the hearing and that he disagreed with the transfer recommendation on the basis that his father is blind and a transfer would burden his family and those who assist in transporting his father to visit plaintiff. Id., at ¶ 4 & Ex. A. It is also noted that plaintiff indicated he understood the actions of the committee. Id. The chrono indicates he was advised of his appeal rights. Id.

CC II Specialist Reaves avers that CDCR's records reflect that plaintiff's recommended transfer was not an act of retaliation and that medical staff and custodial staff are separate, with medical staff only possessing authority to request transfers out of medical necessity and not for non-medical reasons and that, in addition, plaintiff's medical needs, in accordance with Plata receivership, will be met no matter where he is housed. Response, Reaves Dec., at ¶ 5. According to Reaves, a transfer recommendation from the UCC is referred to a

---

[6] "'AB 109, Committee on Budget, Criminal justice alignment' was approved by the Governor on April 4, 2011 and filed with the Secretary of State the same day." Coleman v. Brown, 2011 WL 4553062 * 26 n. 41 (E.D. Cal. 2011).

3

Classification Services Representative to make sure an inmate is transferred to an appropriate facility; based on Reaves' review, plaintiff is a low risk inmate who can be transferred to another institution easily. Id., at ¶ 6. Finally, Reaves declares that plaintiff will not be prejudiced by the transfer because every institution has medical staff and visiting hours and, according to his/her information plaintiff's father lives in Milpitas which is an hour and a half from CTF-Soledad, while MCSP is almost two and a half hours away. Id., at ¶ 7. Moreover, the visiting areas of all institutions are ADA compliant, so his father will not have trouble visiting plaintiff there, according to Reaves. Id.

Discussion

In moving for a protective order, plaintiff must make a good cause showing that without it, he would be significantly impeded from litigating this action. "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex re. Estates of Byrd v. General Motors Corp., 307 F.3d 1206 1210-11 (9th Cir. 2002). The focus of the harm in protective order situations is harm to the ability to litigate, not irreparable harm to the plaintiff.

Concerning witnesses at MCSP, who plaintiff feels he needs in support of his claims in the pending action, his transfer does not foreclose plaintiff's ability to make use of affidavits by any such witnesses or to have them appear as trial witnesses. Also, the claims here are very dependent on the medical records, and not so much the personal interactions of the parties. Moreover, plaintiff has not sought to amend his amended complaint to add a claim of retaliation. If he wishes to proceed on claims of retaliation, he can proceed in a separate action, although the Attorney General's response, indicating that the transfer is predicated on plaintiff's low-risk status and linked to a legislative mandate, undermines the contention that plaintiff's impending transfer is retaliatory.[7]

---

[7] Plaintiff's retaliation contention is also somewhat counterintuitive. He has expressed his displeasure at the medical treatment he has received at MCSP, believes that one of the

4

Even if plaintiff's alleged personal hardships are relevant in the protective order context, to the extent that plaintiff argues that it will be a hardship for his father, who evidently lives in Milpitas, CA, to be transported to a facility that is actually closer to his father's home, plaintiff does not meet his burden. Plaintiff does not make clear how it is important to stay within twenty minutes of a family member or members who may be involved in transporting his father to see him when his father evidently needs to be transported from further away than he would be should plaintiff be transferred to the Soledad facility. The UCC committee action indicates that plaintiff will be referred to the classification staff representative for a non-adverse and involuntary transfer to California Training Facility in Soledad, with the alternate being the Substance Abuse Training Facility in Corcoran. Response, Exh. A to Reaves Dec. Although it is not certain whether plaintiff *will* be transferred to the Soledad facility rather than the alternative, Corcoran, plaintiff on this showing is not entitled to a protective order.[8]

Plaintiff's motion for a protective order will be denied on this showing.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for a TRO/preliminary injunctive relief, filed on December 12, 2011 (docket # 10), construed as a motion for a protective order, is denied.

DATED: January 11, 2012

    /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:009
real1821.ord2

---

doctors "has it in for him," but nevertheless desires to stay at that institution.

[8] Plaintiff expresses a concern about access to a video link to the court should he be transferred. Although it appears that Corcoran does not have such access at the present time, CTF-Soledad does.