IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOUGLAS REAL,

    Plaintiff,

vs.

JALAL SOLTANIAN-ZADEH, et al.,

    Defendants.

No. 2:11-cv-1821 LKK AC P

ORDER and
FINDINGS AND RECOMMENDATIONS

/

    Plaintiff, a state prisoner, is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. The complaint alleges that defendants, health care providers at Mule Creek State Prison (MCSP), were deliberately indifferent to plaintiff's medical condition. Before the court is defendants' fully-briefed motion to dismiss. See ECF No. 29 (motion); ECF No. 33 (opposition); ECF No. 36 (reply); ECF No. 40 (defendant Galloway's notice of joinder in motion).

**Allegations of the Complaint**

    This case proceeds on the First Amended Complaint, ECF No. 8, which alleges as follows. Plaintiff suffers from levoconvex idiopathic scoliosis, a spinal deformity. This condition causes plaintiff chronic pain that is almost unbearable at times. Over a fourteen year

period prior to the events at issue here, plaintiff had received treatment and medication necessary for pain management.

In October of 2010, plaintiff submitted an inmate request for medical treatment to defendant Kettelhake, a registered nurse. Kettelhake did not evaluate or speak to plaintiff, or take any action to alleviate his suffering, but sent plaintiff notice that he would be seen in 30 days. In November of 2010 plaintiff was seen by defendant Dr. Soltanian-Zadeh, who did not listen to plaintiff's complaints and refused to provide any pain management. Dr. Soltanian-Zadeh opined without medical evidence that plaintiff's "whole problem is from improper stretching." He refused to prescribe the necessary medications that had been provided by other doctors in the past. After submitting a grievance regarding his unmet medical needs, plaintiff was seen by defendant Dr. Tseng. Dr. Tseng took no action to relieve plaintiff's suffering. Although Tseng was aware of plaintiff's condition and had previously prescribed pain medications for him, on this occasion Tseng failed to provide treatment.

Plaintiff's complaints were "whitewashed" in the course of the administrative grievance process regarding the denial of treatment. Dr. Heffner, the CEO of Health Care Services for MCSP, failed to remedy the denial of care on appeal.[1] Defendants Smith, Heatley and Galloway, all doctors, and defendant Todd, a physician assistant, comprise MCSP's Pain Management Committee and Medical Authorization Review Committee. These committees were responsible for reviewing plaintiff's case, and failed to order a constitutionally adequate level of care.

**Motion to Dismiss**

Defendants seek dismissal on three distinct grounds: failure to exhaust administrative remedies, failure to state a claim upon which relief can be granted, and qualified immunity. On July 13, 2012, plaintiff was advised of the requirements for opposing a motion to

---

[1] Defendant Heffner was previously dismissed from this action without prejudice. ECF No. 49.

2

dismiss for failure to exhaust, see Wyatt v. Terhune, 315 F.3d 1108 (2003) and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), and provided twenty-one days to supplement his opposition with additional evidence if he chose.  ECF No. 42.  Plaintiff submitted additional evidence on August 3, 2012 (ECF. No. 44), after which defendants filed both a motion to strike the additional evidence in part (ECF No. 45), as well as a supplement to their own reply to the motion (ECF No. 46).

Defendants are correct that plaintiff was granted leave to submit additional evidence regarding the exhaustion issue only, not leave to file supplemental briefing or documentation related to application of Rule 12(b)(6).  Accordingly, plaintiff's additional argument constitutes an unauthorized sur-reply to the extent it supplements his opposition to dismissal under Rule 12(b)(6).  Plaintiff's medical records (ECF No. 44 at 4-7), which post-date his administrative exhaustion process, are not properly before the court.  Defendants' motion to strike evidence is granted as to the medical records.  The undersigned will consider only that portion of ECF No. 44 that goes to the issue of administrative exhaustion.

### Defendant's Assertion of the Non-Exhaustion Defense

*The Exhaustion Requirement*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Regardless of the relief sought, whether injunctive relief or money damages, inmates must exhaust administrative remedies. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999); Booth v. Churner, 532 U.S. 731 (2001). Administrative remedies must be exhausted before the complaint is filed.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002), but see Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010) (PLRA exhaustion requirement satisfied with respect to new claims within an amended or supplemental complaint so long as administrative remedies are exhausted prior to the filing of

the amended or supplemental complaint).

Exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. 81 (2006). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Id. at 84. When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F. 3d 813, 823 (9th Cir. 2010).

Exhaustion may be excused where administrative remedies are effectively unavailable, see Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010), or where exhaustion would be futile, see Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).

Although subsequently amended (see 15 Cal. Code Regs. § 3084.7), the procedures in place at the time relevant for this action required California prisoners to take the following steps in order to exhaust their administrative remedies: (1) attempted informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections.[2] Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement. Id. at 1237-38. Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services.

*Standards Governing the Motion*

In a motion to dismiss for failure to exhaust administrative remedies under non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

---

[2] MTD, Foston Dec., ¶¶ 1,3-4.

4

Cir.), cert. denied, 540 U.S. 810 (2003). The parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, and plaintiff must be provided with notice of his opportunity to develop a record. Id. at 1120 n.14. The court may decide disputed issues of fact. If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy. Id. at 1120.

*The Evidentiary Record Regarding Exhaustion*

Defendants have produced evidence that plaintiff submitted two and only two administrative appeals between October 2010, when the alleged Eighth Amendment violation began, and October 14, 2011, when the First Amended Complaint was filed. Only the first of these was reviewed at the Third Level before the First Amended Complaint was filed. See ECF No. 29-2 (Decls. Of Foston, Zamora (with attachments), Elorza, and McLean (with attachments)).[3]

First Grievance: Log No. MCSP-16-10-12928

On November 22, 2010, plaintiff submitted an inmate health care appeal form (602-HC) alleging that he had been treated with indifference by Dr. Soltanian-Zadeh on November 16, 2010. The grievance specified that plaintiff was seen by Dr. Soltanian-Zadeh twenty-six days after he submitted a request to be seen for a back spasm. Dr. Soltanian-Zadeh failed to review plaintiff's medical history and "arbitrarily denied [plaintiff's] renewal request for methocarbomal." He told plaintiff that his "back problem" was caused by "improper stretching exercises." Dr. Soltanian-Zadeh disregarded plaintiff's scoliosis and failed to address his need for palliative care. Informal review was bypassed. Ex. A to Zamora Decl.; Ex. A to McLean Decl. The appeal was denied at the first level by Dr. Tseng on December 17, 2010. Ex. B to McLean Decl.

---

[3] Exhibit A to plaintiff's Opposition, ECF No. 33, reproduces the same documents provided by defendants as exhibits to the Zamora and McLean declarations. Plaintiff provides no additional materials relevant to administrative exhaustion.

Plaintiff submitted his appeal for second level review on December 26, 2010. He stated that he was dissatisfied with Dr. Tseng's first level response, which was contrary to Dr. Tseng's own previous treatment of plaintiff's scoliosis. Ex. A to Zamora Decl.; Ex. A to McLean Decl. The appeal was "granted in part" at the second level by Dr. Heffner on January 25, 2011.[4] Ex. C to McLean Decl.

Plaintiff appealed to the third level on January 29, 2011. Ex. A to Zamora Decl. The appeal was denied at the Director's Level on May 10, 2011. Ex. B to Zamora Decl.

<u>Second Grievance: Log No. MCSP-16-11-10985</u>

On May 15, 2011, plaintiff submitted an inmate health care appeal form (602-HC) alleging that his placement in the Pain Management Program had not resulted in appropriate treatment. The grievance stated that defendant Soltanian-Zadeh told plaintiff on April 21, 2011 that his request for placement in the program had been approved by the MCSP Pain Management Committee on February 17, 2011, but that he still had not received adequate palliative care. Plaintiff alleged that Dr. Soltanian-Zadeh continued to demonstrate deliberate indifference, and had colluded with the Pain Management Committee. Plaintiff requested disclosure of the membership of the Committee. Informal review was bypassed. Ex. C to Zamora Decl.; Ex. D to McLean Decl. The appeal was denied at the first level by defendant Todd on June 21, 2011. Ex. E to McLean Decl.

Plaintiff submitted the appeal for second level review on Jun 29, 2011. Ex. C to Zamora Decl.; Ex. D to McLean Decl. The second level appeal was denied on August 18, 2011. Ex. F to McLean Decl.

Plaintiff appealed to the third level on August 25, 2011. Ex. C to Zamora Decl. The appeal was denied at the Third Level on January 9, 2012. Ex. D to Zamora Decl.

---

[4] Plaintiff argued at the third level that no relief was actually afforded by Dr. Heffner, who purportedly "granted in part" plaintiff's request to be seen by a doctor other than Dr. Soltanian-Zadeh. Dr. Heffner noted that plaintiff had already been seen by Dr. Tseng. Ex. C to McLean Decl. (ECF No. 29-2 at 41).

*Analysis*

First Grievance: Log No. MCSP-16-10-12928

Plaintiff's first administrative appeal, Log No. MCSP-16-10-1292, was decided at the third level prior to the filing of the complaint. This appeal focused from the outset on Dr. Soltanian-Zadeh's response to plaintiff's pain, and plainly exhausted plaintiff's administrative remedies as to defendant Soltanian-Zadeh. See Barry, 985 F. Supp. at 1237-38 (appeal through director's level satisfies PLRA's exhaustion requirement). Defendants do not contend otherwise.

The first appeal also fairly encompassed plaintiff's grievance about the delay between plaintiff's request for medical attention in October 2010 and his November 2010 appointment with Dr. Soltanian-Zadeh. The complaint alleges that defendant Kettlehake was responsible for this delay. Defendants argue that the administrative appeal was untimely as to Kettlehake, and therefore ineffective to exhaust claim against him, because it was submitted more than 15 days after the incident involving Kettlehake. While administrative appeals that are rejected on procedural grounds do not satisfy the exhaustion requirement, see Sapp, 623 F.3d at 826, this appeal was not screened out or rejected as untimely. Defendants rely on a single footnote in an unpublished case for the proposition that untimeliness as a defense to administrative exhaustion is not waived by the processing of the appeal on its merits. The argument is unpersuasive. If an administrative grievance is not rejected on procedural grounds by the screening authority, the prisoner is not made aware that he is foreclosed from reliance on the grievance. Even if this court adopted defendant's legal theory, it would not find the 602 untimely as to Kettlehake. Defendants contend that a 602 should have been filed within 15 days of the date plaintiff gave Kettlehake his medical request, but the grievance was about the almost month-long delay after that request. The delay continued until plaintiff was seen by Dr. Soltanian-Zadeh, and plaintiff filed the 602 promptly after that visit.

The fact that the appeal focused on the conduct of Dr. Soltanian-Zadeh does not defeat exhaustion as to nurse Kettlehake. The initial 602 specifically referenced the delay, and

the second level reviewer noted that the issue presented on appeal included Kettlehake's actions: "You state you attempted to receive treatment for your back spasms on October 20, 2010, but Registered Nurse (RN) Kettlehake ignored your triage need and deferred you to the Dr. Line." Ex. C to McLean Decl. These documents were before the Third Level reviewer when he denied the appeal and completed the exhaustion process. Accordingly, the claim against defendant Kettlehake is exhausted.

Defendants argue that the claim is not exhausted as to defendant Tseng because he was not named in the initial 602. Tseng was the first level reviewer of the grievance against defendants Soltanian-Zadeh and Kettlehake, and plaintiff added complaints about Tseng's handling of the matter to his requests for second and third level review. The 602 form itself indicates that this is the proper way to proceed, by requiring the inmate to explain the reason for his dissatisfaction with the prior resolution of his appeal. See Ex. A to Zamora Decl.[5] Plaintiff's complaints against Tseng were addressed at the second and third levels. See Ex. C to McLean Decl.; Ex. Ex. B to Zamora Decl. "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp, 623 F.3d at 824. Under the regulations in force at the time, it was not necessary to identify a defendant by name in order to exhaust. Id.

For the foregoing reasons, the undersigned finds plaintiff's Eighth Amendment claim exhausted as to defendants Kettlehake, Soltanian-Zadeh and Tseng.

Second Grievance: Log No. MCSP-16-11-10985

Plaintiff's second inmate health care appeal was denied at the Director's Level on January 9, 2012. Ex. D to Zamora Decl. This action was filed on July 12, 2011, and the operative amended complaint was filed on October 14, 2011. Because the appeal was not

---

[5] See also 15 Cal. Code Regs. 3084.6(c) (inmate is required to submit an appeal "within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision"). This regulation was in effect prior to July 28, 2011.

8

concluded prior to the filing of the complaint, plaintiff did not exhaust his administrative remedies as to the defendants whose conduct was at issue in that appeal: defendants Smith, Heatley, Galloway and Todd. See McKinney, 311 F.3d at 1199.

Plaintiff argues in opposition to the motion that the third level response to the appeal exceeded the applicable time limits. See 15 Cal. Code Regs. 3084.6 (b)(4) (third level response to be completed within 60 working days). This appeal was submitted for third level review on August 18, 2011, and plaintiff did not receive his third level response until January 9, 2012. The decision was indeed late. However, this delay in the exhaustion process cannot excuse exhaustion because plaintiff filed this lawsuit before he had even initiated third level review. Plaintiff was required to exhaust prior to bringing suit. McKinney, 311 F.3d at 1199. He could have filed a complaint that named only Kettlehake, Soltanian-Zadeh and Tseng, and amended following exhaustion of his second grievance to add newly-exhausted defendants. See Rhodes, 621 F.3d at 1007. However, because plaintiff's claims against the Pain Management Committee defendants were unexhausted when presented to the court in the original complaint, they must be dismissed. Id. at 1004-1005.

### Defendants' Challenge To The Sufficiency Of The Complaint

The only claims that survive administrative exhaustion analysis are those against defendants Soltanian-Zadeh, Kettlehake and Tseng. Accordingly, the court considers the Rule 12(b)(6) motion only as to those defendants.

*Standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)*

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure

9

1 § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual matter,
2 accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556
3 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when
4 the plaintiff pleads factual content that allows the court to draw the reasonable inference that the
5 defendant is liable for the misconduct alleged." Id.

6       In considering a motion to dismiss, the court must accept as true the allegations of
7 the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976),
8 construe the pleading in the light most favorable to the party opposing the motion and resolve all
9 doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.
10 869 (1969).  The court will "'presume that general allegations embrace those specific facts that
11 are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510
12 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).
13 Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.
14 Haines v. Kerner, 404 U.S. 519, 520 (1972).

15       The court may consider facts established by exhibits attached to the complaint.
16 Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider
17 facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385,
18 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers
19 filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).
20 The court need not accept legal conclusions "cast in the form of factual allegations." Western
21 Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

22       A pro se litigant is entitled to notice of the deficiencies in the complaint and an
23 opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See
24 Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

25       *Governing Eighth Amendment Principles*
26       In order to state a § 1983 claim for violation of the Eighth Amendment based on

10

inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. Farmer, 511 U.S. at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Id. at 836-37. It not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted) (emphasis added).

A physician need not fail to treat an inmate altogether in order to violate that

11

inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to *competently* treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id. However, mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

*Analysis*

Defendant contends that plaintiff has not pled facts sufficient to state an Eighth Amendment claim against defendant Kettelhake, the nurse to whom plaintiff submitted a request for treatment in October of 2010. The complaint alleges that after receiving the request, Kettelhake sent plaintiff a document in the prison mail stating that he would be seen in 30 days. Plaintiff alleges in conclusory terms that Kettlehake violated a legal, ethical and moral obligation to evaluate him physically, speak to him about his condition, diagnose and treat him, or ensure that he was promptly referred to a doctor. ECF No. 8 at 5. Although the complaint describes plaintiff's serious, chronic and painful scoliosis condition, it does not alleged any facts from which it could be concluded that Kettlehanke was aware of a serious medical need that required immediate treatment. Without such facts, there can be no Eighth Amendment liability. See Farmer v. Brennan, 511 U.S. at 837. It is not enough for plaintiff simply to impute to this defendant a responsibility for knowing his condition. The motion to dismiss for failure to state a claim as to defendant Kettelhake should be granted.

12

1  Defendants' motion as to defendants Soltanian-Zadeh and Tseng, however, is less
2 persuasive. Plaintiff alleges facts establishing that both doctors were aware that he suffered from
3 a serious and chronically painful spinal condition and that he had required palliative pain care for
4 more than a decade. Tseng had treated plaintiff in the past, and Sotanian-Zadeh examined him on
5 November 16, 2010. Plaintiff told both doctors how much pain he was in. Both doctors
6 personally refused to prescribe the medication that plaintiff alleges was necessary to control his
7 pain. Their refusal to provide medication caused extreme suffering. These allegations, accepted
8 as true, are sufficient to frame an Eighth Amendment claim against defendants Soltanian-Zadeh
9 and Tseng.

10  <u>Qualified Immunity</u>

11  "Government officials enjoy qualified immunity from civil damages unless their
12 conduct violates 'clearly established statutory or constitutional rights of which a reasonable
13 person would have known.'" <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001) (citing, inter
14 alia, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). In resolving a claim for qualified
15 immunity the court addresses two questions: (1) whether the facts, when taken in the light most
16 favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right and (2)
17 whether a reasonable officer could have believed that his conduct was lawful, in light of clearly
18 established law and the information the officer possessed. <u>Anderson v. Creighton</u>, 483 U.S. 635
19 (1987). The court may consider these questions in whatever order makes the most sense given
20 the circumstances of the case. <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009).

21  Under <u>Estelle v. Gamble</u>, 429 U.S. at 106, and <u>Farmer v. Brennan</u>, 511 U.S. at 837,
22 there can be no question that the law regarding deliberate indifference to a serious medical need
23 was clearly established prior to the events at issue. The undersigned has previously determined
24 that the facts, taken in the light most favorable to plaintiff, demonstrate that defendants Soltanian-
25 Zadeh and Tseng evinced deliberate indifference to a serious medical condition that was causing
26 plaintiff severe pain. Reasonable physicians with the knowledge that Soltanian-Zadeh and Tseng

13

possessed regarding plaintiff's medical condition could not have believed that a complete failure to provide pain relief was consistent with the Eighth Amendment. Defendants Soltanian-Zadeh and Tseng do not demonstrate entitlement to qualified immunity.

State Law Claim

Defendants also seek dismissal of plaintiff's state law tort claim for negligence and/or medical malpractice, arguing that plaintiff has pled neither compliance with the California Government Claims Act (GCA) nor facts excusing compliance. The GCA, Cal. Gov't. Code §§ 900, et seq., provides the remedy for tort claims against public officials. The GCA requires a party seeking to recover money damages from a public entity or its employees to submit a claim to the California Victim Compensation and Government Claims Board (GCB) before filing suit in court, generally no later than six months after the cause of action accrues. Cal. Gov't. Code §§ 905, 910, 911.2, 945, 950.2; see also Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 208 (2007) ("Before suing a public entity, the plaintiff must present a timely written claim for damages to the entity."); and see, State v. Superior Court of Kings County (Bodde), 32 Cal. 4th 1234, 1245, 13 Cal. Rptr. 534 (2004); Mangold v. California Pub. Utils. Comm'n., 67 F.3d 1470, 1477 (9th Cir. 1995) (9th Cir. 1995); Karim-Panahi v.Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). "The legislature's intent to require the presentation of claims before suit is filed could not be clearer." City of Stockton v. Super. Ct., 42 Cal. 4th 730, 746 (2007) ("The purpose of providing public entities with sufficient information to investigate claims without the expense of litigation is not served if the entity must file a responsive pleading alerting its opponent to the claim requirements.").

Timely claim presentation is not merely a procedural requirement of the GCA but is an element of a plaintiff's cause of action. Shirk, 42 Cal. 4th at 209. Accordingly, a plaintiff asserting a claim subject to the GCA must affirmatively allege compliance with the claim presentation procedure, or circumstances excusing such compliance, in his complaint. Id. This requirement applies when those claims are presented in federal court. Karim-Panahi v. Los

1  Angeles Police Dep't., 839 F.2d at 627.

2          Defendants seeks judicial notice of a declaration from the custodian of records for
3  the California Victim Compensation and Government Claims Board that plaintiff has not filed a
4  claim. This record is susceptible of judicial notice and the undersigned grants defendants' request
5  in this regard. See Smith v. Duncan, 297 F.3d 809, 815 (9th Cir. 2002) *abrogated on other*
6  *grounds*, see Moreno v. Harris, 245 Fed. Appx. 606 (9th Cir. 2007). A court may take judicial
7  notice of undisputed "matters of public record" without converting a motion to dismiss into a
8  motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir,
9  2001), citing MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir.1986).

10          Plaintiff does not dispute that he failed to submit a claim to the GCB but asserts,
11  incorrectly, that the requirement does not apply in federal court. In his supplemental opposition
12  (ECF No. 44), plaintiff concedes that he was unaware of the GCA filing requirement.
13  Defendants' motion to dismiss the state law negligence claim for money damages should be
14  granted.

15          Accordingly, IT IS HEREBY ORDERED that defendants' motion to strike in part
16  plaintiff's sur-reply (ECF No. 45) is granted as set forth above.

17          IT IS HEREBY RECOMMENDED defendants' motion to dismiss (ECF No. 29)
18  be granted in part and denied in part, as follows:

19          1. Defendants' motion to dismiss for failure to exhaust administrative remedies be
20  granted as to defendants Smith, Heatley, Galloway and Todd only and these defendants be
21  dismissed;

22          2. Defendants' motion to dismiss plaintiff's state law negligence claim be granted
23  and this claim be dismissed;

24          3. Defendants' motion to dismiss for failure to state a claim be granted as to
25  defendant Kettelhake and denied as to defendants Soltanian-Zadeh and Tseng; and

26          4. Defendants Soltanian-Zadeh and Tseng be directed to file an answer within

thirty days following adoption of these findings and recommendations, should that occur.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 5, 2013.

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009
real1821.mtd