1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DOUGLAS REAL,                               No.  2:11-cv-01821 TLN AC P

12              Plaintiff,

13        v.                                      ORDER AND FINDINGS &
                                                  RECOMMENDATIONS
14   JALAL SOLTANIAN-ZEDEH, et al.,

15              Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se in this action filed pursuant to 42 U.S.C. §

18   1983. The court currently has before it the parties' cross-motions for summary judgment.  ECF

19   Nos. 73, 74.  Plaintiff has responded to defendants' motion (ECF No. 77) and defendants have

20   replied (ECF No. 78).  Defendants have responded to plaintiff's motion (ECF No. 80) and

21   plaintiff has not replied.  The court also has before it defendants' motion to strike plaintiff's reply

22   to his vacated motion for summary judgment and request for an order to show cause to determine

23   if plaintiff should be sanctioned.  ECF No. 71.

24   I.     Motion to Strike and Request for Order to Show Cause

25          Defendants move to strike plaintiff's reply in support of his vacated motion for partial

26   summary judgment (ECF No. 70) on the ground that it is an unauthorized filing.  ECF No. 71.

27   They also request that the court issue an order for plaintiff to show cause why sanctions should

28   not be imposed for his misrepresentations regarding who signed and mailed his reply and for

                                                 1

1    disregarding a previous court order.  Id.  Plaintiff has not responded.

2           Defendants argue that because plaintiff's original motion for summary judgment (ECF

3    No. 63) was vacated (ECF No. 69), his reply in support of that motion should be stricken from the

4    record as an unauthorized filing.  ECF No. 71 at 3-4.  Since plaintiff's reply was filed after the

5    motion was vacated, the defendants are correct that it is an unauthorized filing.  However, in light

6    of the recommended disposition of the case, the court will deny defendants' motion to strike as

7    moot.

8           Defendants also request that the court consider issuing an order for plaintiff to show cause

9    why he should not be sanctioned for misleading the court.  Id. at 4-5.  Defendants present

10   evidence that indicate that plaintiff is not the individual who signed and mailed the reply.  ECF

11   No. 71-1.  They have also provided evidence that indicates that plaintiff is not the individual who

12   signed and mailed his re-submitted motion for partial summary judgment (ECF No. 74).  ECF

13   No. 80-3 at 29-34.  Plaintiff has not responded to the defendants allegations.

14          Although the evidence presented by the defendants indicates that plaintiff is falsifying his

15   certificates of service, and possibly even having another inmate forge his signature,[1] because the

16   court will recommend denying plaintiff's motion for summary judgment and granting defendants'

17   summary-judgment motion, it will decline to issue an order for plaintiff to show cause why he

18   should not be sanctioned.

19   II.    Plaintiff's Allegations

20          This action is proceeding on plaintiff's first amended complaint.  ECF No. 8.  Plaintiff

21   asserts that defendants Soltanian-Zadeh and Tseng violated his rights under the Eighth

22   Amendment when they refused to address his medical needs or provide pain management.  Id. at

23   6-8.  Specifically, plaintiff alleges that he suffers from "levoconvex idiopathic rotatory scoliosis,"

24   which causes him significant pain.  Id. at 5.  He claims that when he was seen by defendant

25   _____

26   [1]  This court has previously advised plaintiff that the right to assistance does not create a right to
     have another individual stand in his shoes for litigation related purposes and that a non-attorney
27   may not serve in a representative capacity.  ECF No. 68 at 2.  Plaintiff is now advised for future
     purposes that deliberately providing false or misleading information to the court may result in
28   sanctions, up to and including dismissal of the action.  See Fed. R. Civ. P. 11.

1    Soltanian-Zadeh in November 2010, Soltanian-Zadeh refused to listen to his complaints, review

2    his medical history, or provide any type of pain management or treatment for his condition.  Id. at

3    6-7.  Plaintiff also alleges that defendant Tseng saw him in relation to a medical grievance, at

4    which time Tseng failed to correct the deficiencies in his medical care.  Id. at 7-8.  Plaintiff

5    alleges that Tseng should have at least referred him to a specialist and prescribed pain

6    management.  Id.

7    III.    Defendants' Motion for Summary Judgment

8            A.      Defendants' Motion

9            Defendants move for summary judgment on the grounds that they were not deliberately

10   indifferent to plaintiff's serious medical need and that they provided appropriate treatment within

11   the applicable standard of care for plaintiff's scoliosis and chronic lower back pain.  ECF No. 73-

12   2 at 13-20.  They also argue that plaintiff's claim for equitable relief is moot, that plaintiff cannot

13   establish sufficient facts to entitle him to punitive damages, and that they are entitled to qualified

14   immunity.  Id. at 20-23.

15           B.      Plaintiff's Opposition

16           At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

17   Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed

18   must support the assertion by . . . citing to particular parts of materials in the record . . . ."

19   Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed

20   facts in the manner required by Local Rule 260(b).  The document filed by plaintiff appears to

21   address only those statements that he disputes and does not specifically identify the facts that he

22   admits.  ECF No. 77 at 44-47.

23           Pursuant to Federal Rule of Civil Procedure 56(e), if a party fails to properly address a

24   fact as required, "the court may consider the fact undisputed for purposes of the motion."

25   However, it is well-established that the pleadings of pro se litigants are held to "less stringent

26   standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)

27   (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

28   govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other

3

1   grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc).  However, the

2   unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are

3   subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as "limited

4   access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362,

5   1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of

6   "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

7       The court is mindful of the Ninth Circuit's more overarching caution in this context, as

8   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

9   pro se inmates and . . . avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

10  F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its

11  entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However,

12  only those assertions in the opposition which have evidentiary support will be considered.

13      Plaintiff's opposition argues that defendant did not meet the applicable standard of care

14  because no care was provided.  ECF No. 77 at 3.  He also argues that defendants violated the

15  applicable standard of care because they did not follow applicable prison medical policies.

16  IV.    Plaintiff's Motion for Summary Judgment

17         A.    Plaintiff's Motion

18      Plaintiff argues that he is entitled to partial summary judgment, but does not identify the

19  claims on which he seeks summary judgment.  ECF No. 74.  Plaintiff argues that he suffered from

20  a serious medical condition, that he was entitled to adequate medical care for that condition, and

21  that the defendants failed to provide him appropriate care.  Id.

22         B.    Defendants' Opposition

23      The defendants argue that plaintiff's motion should be denied because he has not

24  complied with the Federal Rule of Civil Procedure 56 or Local Rule 260.  ECF No. 80 at 3-4.

25  They also argue that plaintiff has not established that he suffered from a serious medical need or

26  that the defendants were deliberately indifferent to his need.  Id. at 6-12.

27  V.     Undisputed Material Facts

28      This section will set forth the undisputed material facts necessary for the resolution of

4

both summary-judgment motions.  The facts outlined below are undisputed or have been determined by the court to be undisputed based upon the statements and evidence presented by the parties.[2]

Plaintiff was housed at Mule Creek State Prison ("MCSP") from 1993 until January 2012.  Defendants' Statement of Undisputed Material Facts ("DSUF") (ECF no. 73-3) at ¶ 2.  Defendant Soltanian-Zadeh is a licensed doctor of osteopathic medicine, is board certified in family medicine, and has been employed as a physician at MCSP since October 2007.  Id. at ¶¶ 5-6.  Defendant Tseng is a licensed medical doctor, is board certified in internal medicine, and was employed as a physician at MCSP from September 2007 through February 2013.  Id. at ¶ 4.

Plaintiff was diagnosed with scoliosis in 1997.  ECF No. 8 at 28.  Reports from x-rays performed on January 29, 2009 (ECF No. 73-7 at 40); December 17, 2010 (id. at 39); and May 21, 2012 (ECF No. 77 at 35);[3] describe plaintiff's scoliosis as mild to moderate and show that it was stable during that time period.  Plaintiff also suffers from chronic lower back pain as a result of his scoliosis.  DSUF ¶¶ 7-9; ECF No. 8.  There is no specific corrective treatment for the type of scoliosis plaintiff had when he was treated by defendants.  DSUF ¶ 57.

On January 27, 2009, plaintiff complained of lower back pain and was prescribed Naprosyn for ninety days.  DSUF ¶ 11; ECF No. 73-7 at 15, 35.  On March 11, 2009, he was prescribed methocarbomal for twenty-one days for a muscle spasm.  DSUF ¶ 12; ECF No. 73-7 at

_____

[2]  Though the defendants purport to dispute nearly all of plaintiff's statements of fact, many of the facts are not truly disputed and defendants are instead seeking to either admit them with qualifications or add additional material facts.  ECF No. 80-1.  Plaintiff, on the other hand, appears to have only addressed the statements of fact which he disputes and presumably admits those facts not addressed.  ECF No. 77 at 44-47.  However, because plaintiff is proceeding pro se, the court has taken into consideration the record in its entirety in determining whether a fact is disputed.

[3]  Although some of the medical records submitted by plaintiff have not been authenticated, the court will consider them to the extent they are relevant because they could be made admissible at trial.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dep't of Pub. Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prisoner and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial).

12.  On January 6, 2010, plaintiff was prescribed a bottle of Naprosyn for his back pain.  DSUF ¶ 15; ECF No. 73-7 at 11, 37.  On February 5, 2010, plaintiff presented with an active muscle spasm and was prescribed Naproxen for sixty days and Robaxin for ten days.  DSUF ¶ 17; ECF no. 73-7 at 9, 36; Deposition of Douglas Real ("Real Depo.") (ECF No. 73-7 at 62-94) at 63:15-16.

On October 17, 2010, plaintiff submitted a request for medical treatment in which he stated he was having back spasms due to his scoliosis.  ECF No. 8 at 1; DSUF ¶ 19; ECF No. 73-7 at 31.

On November 16, 2010, plaintiff had an appointment with defendant Soltanian-Zadeh to address his request for treatment.  DSUF ¶ 20; ECF No. 73-7 at 30, 97; ECF No. 77 at 46.  At the appointment, Soltanian-Zadeh examined plaintiff and found that he was doing well at the time and could ambulate, sit, and stand without difficulty or discomfort.  DSUF ¶ 20; ECF No. 73-7 at 30.  Plaintiff requested Robaxin (methocarbamol) for the muscle spasm he had experienced when he put in his request for treatment in October.  Id.  Defendant Soltanian-Zadeh found that there was no need for Robaxin at the time of the exam and offered plaintiff a prescription for Tylenol, Naprosyn, or other anti-inflammatories, which plaintiff refused, and instructed plaintiff on proper back exercises.  ECF No. 73-7 at 30; DSUF ¶¶ 21, 65; ECF No. 77 at 3, 49.

On November 22, 2010, plaintiff submitted a healthcare grievance in which he stated that he had requested Naproxen and methocarbomal and that defendant Soltanian-Zadeh had arbitrarily denied the request for methocarbomal.  DSUF ¶ 23; ECF No. 73-7 at 97-99; ECF No. 77 at 46.  He also requested that he be seen by another doctor.  Id.

On December 9, 2010, plaintiff had an appointment with defendant Soltanian-Zadeh in response to a request for medical services.  DSUF ¶ 24; ECF No. 73-7 at 29; Real Depo. at 53:1.  During the appointment, plaintiff requested to be put in the pain management program, denied any acute changes to his chronic lower back pain, and again requested Robaxin.  DSUF ¶ 24; ECF No. 73-7 at 29.  Defendant Soltanian-Zadeh examined plaintiff and found that plaintiff could ambulate, sit, and stand without difficulty or discomfort.  DSUF ¶ 25; ECF No. 73-7 at 29.  Plaintiff was scheduled for the next available pain management intake, his request for Robaxin

1   was denied, and he was offered a prescription for Tylenol and nonsteroidal anti-inflammatory

2   drugs ("NSAIDs"), which he refused.  DSUF ¶¶ 24, 26; ECF No. 77 at 3, 49.

3        On December 14, 2010, plaintiff saw defendant Soltanian-Zadeh for his pain management

4   intake appointment.  DSFU ¶ 28; ECF No. 73-7 at 7, 21-28; Real Depo. at 48:20-22.  Soltanian-

5   Zadeh conducted an exam and completed the intake paperwork.  DSUF ¶ 29; ECF No. 73-7 at 7,

6   21-28; Real Depo. at 48:25-49:2.  Plaintiff reported that he was able to perform all the activities

7   of daily life and exercised one to one and a half hours per day by walking and jogging and there

8   was no indication he was experiencing a muscle spasm during the exam.  DSUF ¶ 29; ECF No.

9   73-7 at 7, 21-22.  Plaintiff again requested Robaxin and his request was forwarded to the Pain

10  Management Committee for review.  DSUF ¶ 30; ECF No. 73-7 at 22; Real Depo. at 49:5-18.

11  Plaintiff was referred to physical therapy, x-rays of his spine were ordered, and a follow-up pain

12  management appointment was scheduled.  DSFU ¶ 30; ECF No. 73-7 at 7.

13       On December 17, 2010, x-rays were taken of plaintiff's spine that showed that his

14  scoliosis was stable and had not progressed since the previous x-ray.  ECF No. 73-7 at 39.

15  Plaintiff also had an appointment with defendant Tseng regarding the medical grievance he had

16  submitted on November 22, 2010.  DSUF ¶ 32; Real Depo. at 63:23-25.  Defendant Tseng

17  reviewed plaintiff's grievance, interviewed him, and reviewed his medical records.  DSUF ¶ 33;

18  Real Depo. at 64:1-6.  Defendant Tseng opined that even though defendant Soltanian-Zadeh's

19  treatment differed from the treatment defendant Tseng had offered in February 2010, Soltanian-

20  Zadeh's treatment was still well within the appropriate standard of care.  DSUF ¶¶ 34-36; Real

21  Depo. at 64:11-24.  When Tseng treated plaintiff in February 2010, plaintiff showed signs of

22  muscle spasm and tightness and was prescribed Robaxin.  DSUF ¶¶ 16-17; ECF No. 73-7 at 36;

23  Real Depo. at 63:15-16.  Defendant Tseng did not have any further contact with plaintiff.  DSUF

24  ¶ 37; Real Depo. at 65:3-9; ECF No. 77 at 47.

25       On January 5, 2011, plaintiff was seen by a physical therapist for an evaluation of his

26  condition.  DSUF ¶ 38; ECF No. 73-7 at 48; ECF No. 74 at 6; ECF No. 77 at 47.  Plaintiff

27  reported that "he had not had [a] spasm since early November."  ECF No. 73-7 at 48.  Plaintiff

28  confirms that when he saw the physical therapist it was "well after his spasms were gone."  ECF

1   No. 77 at 47.  The evaluation reflected that plaintiff reported playing handball one to two times a

2   week for two hours, doing upper body strength training three to four hours a week for up to an

3   hour, jogging five miles once a week, and doing core exercises four to five times per week for up

4   to forty-five minutes.  ECF No. 73-7 at 48.

5           On February 15, 2011, plaintiff had a chronic pain follow-up appointment with defendant

6   Soltanian-Zadeh.  DSUF ¶ 40; Real Depo. at 53:3.  Plaintiff reported exercising "five to six hours

7   per week by stretching, walking, doing sit-ups and push-ups, jogging, and playing handball."

8   DSUF ¶ 40; ECF No. 73-7 at 20.  He did not exhibit any signs of muscle spasm and could

9   ambulate, sit, and stand without difficulty or discomfort.  Id.  He refused a prescription for

10  Tylenol, ibuprofen, or Naprosyn and was scheduled for a follow-up appointment.  Id.

11          On February 17, 2011, the Pain Management Committee denied plaintiff's request for

12  Robaxin in a seven to zero vote.  DSUF ¶ 42; ECF No. 73-7 at 22; Real Depo. at 49:21-22.  They

13  also unanimously agreed to deny prescriptions for opioids and other prescriptions and approve the

14  continued prescription of Tylenol or other NSAIDS and exercise.  Id.

15          On April 21, 2011, plaintiff had another chronic pain follow-up with defendant Soltanian-

16  Zadeh.  DSUF ¶ 43; Real Depo. at 53:6.  Plaintiff reported that after playing handball for two and

17  a half hours his back had locked up on him and that he was exercising approximately one and a

18  half hours four times a week by walking, doing sit-ups and push-ups and playing handball.

19  DSUF ¶ 43; ECF No. 73-7 at 18.  He was able to ambulate, sit, and stand without difficulty or

20  discomfort and did not show any signs of muscle spasm.  DSUF ¶ 43; ECF No. 73-7 at 18.  He

21  was offered Tylenol and NSAIDs, which he declined, and requested Robaxin, which was denied.

22  DSUF ¶ 44; ECF No. 73-7 at 18.  He was also educated on range-of-motion and back exercises.

23  Id.  Plaintiff indicated that he was taking ibuprofen from canteen one to two times per week.  ECF

24  No. 73-7 at 18.

25          On June 17, 2011, Soltanian-Zadeh renewed plaintiff's accommodation for a shoe lift.

26  DSUF ¶ 45; ECF No. 73-7 at 42.

27          Plaintiff submitted healthcare requests on October 30, 2011, and November 13, 2011, for

28  back pain and muscle spasm.  DSUF ¶ 46; ECF No. 73-7 at 53, 55.  He was scheduled for an

8

1   appointment with a doctor.  Id.

2           On November 21, 2011, plaintiff saw defendant Soltanian-Zadeh for a chronic pain

3   follow-up.  DSUF ¶ 47; ECF No. 73-7 at 52; Real Depo. at 53:9.  He stated he was playing sports

4   and able to conduct the activities of daily life, but that he had pulled his back picking up boxes.

5   DSUF ¶ 47; ECF No. 73-7 at 52.  He was able to ambulate, stand, and sit without difficulty and

6   was not experiencing a muscle spasm.  Id.  He was offered Tylenol and NSAIDs, but declined,

7   and his request for Robaxin was denied.  DSUF ¶ 48; ECF No. 73-7 at 52.

8           Plaintiff did not have any flare ups between his November 2011 appointment and January

9   2012, when he was transferred from MCSP.  DSUF ¶ 50; Real Depo. at 68:23-24.  After

10  November 2011, he did not see defendant Soltanian-Zadeh again.  DSUF ¶ 2; Real Depo. at 53:9.

11          During the relevant period, defendant Soltanian-Zadeh diagnosed plaintiff as having stable

12  mechanical low back pain.  DSUF ¶¶ 21, 26, 30, 41, 44, 48.  The purpose of pain management is

13  to evaluate the type, cause, and severity of pain and develop a comprehensive plan for managing

14  that pain.  DSUF ¶ 27.  One primary concern in treating pain is determining whether the pain is

15  significant enough to impact activities of daily living.  DSUF ¶ 58.  Pain management is also used

16  to determine whether pain medications that are narcotic or have a propensity for abuse should be

17  prescribed.  DSUF ¶ 27.

18          Robaxin is a muscle relaxant that is prescribed on a short term basis to aid with recovery

19  "from acute injury accompanied by muscle strain and/or spasm and severe pain."  DSUF ¶ 62.  It

20  is used to speed the healing of injuries that will normally heal on their own without medication.

21  Id.  Because of its potential for abuse, Robaxin must be used carefully in the prison environment.

22  DSUF ¶ 63.

23  VI.     Legal Standards for Summary Judgment

24          Summary judgment is appropriate when the moving party "shows that there is no genuine

25  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

26  Civ. P. 56(a).

27          Under summary judgment practice, the moving party "initially bears the burden of

28  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

9

1    627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

2    The moving party may accomplish this by "citing to particular parts of materials in the record,

3    including depositions, documents, electronically stored information, affidavits or declarations,

4    stipulations (including those made for purposes of the motion only), admission, interrogatory

5    answers, or other materials" or by showing that such materials "do not establish the absence or

6    presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

7    support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

8    of proof at trial, "the moving party need only prove that there is an absence of evidence to support

9    the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see

10   also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate

11   time for discovery and upon motion, against a party who fails to make a showing sufficient to

12   establish the existence of an element essential to that party's case, and on which that party will

13   bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof

14   concerning an essential element of the nonmoving party's case necessarily renders all other facts

15   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

16   whatever is before the district court demonstrates that the standard for entry of summary

17   judgment, . . . , is satisfied."  Id. at 323.

18          If the moving party meets its initial responsibility, the burden then shifts to the opposing

19   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

20   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

21   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

22   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

23   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

24   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

25   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

26   governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

27   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

28   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

10

1   party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

2          In the endeavor to establish the existence of a factual dispute, the opposing party need not

3   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

4   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

5   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

6   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

7   Matsushita, 475 U.S. at 587 (citations omitted).

8          "In evaluating the evidence to determine whether there is a genuine issue of fact," the

9   court draws "all reasonable inferences supported by the evidence in favor of the non-moving

10  party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

11  the opposing party's obligation to produce a factual predicate from which the inference may be

12  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

13  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

14  party "must do more than simply show that there is some metaphysical doubt as to the material

15  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

16  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

17  omitted).

18         On April 30, 2014, the defendant served plaintiff with notice of the requirements for

19  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF. No. 73-1.

20  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (movant may provide notice) (en banc),

21  cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

22  VII.    Legal Standard Governing Eighth Amendment Claims

23         In order to state a §1983 claim for violation of the Eighth Amendment based on

24  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

25  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

26  To prevail, plaintiff must show both that his medical needs were objectively serious, and that

27  defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299

28  (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992) (on remand).  The requisite

1  state of mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1,

2  5 (1992).

3       A serious medical need exists if the failure to treat a prisoner's condition could result in

4  further significant injury or the unnecessary and wanton infliction of pain.  Indications that a

5  prisoner has a serious need for medical treatment are the following:  the existence of an injury

6  that a reasonable doctor or patient would find important and worthy of comment or treatment; the

7  presence of a medical condition that significantly affects an individual's daily activities; or the

8  existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F.2d 1332, 1337-

9  41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).

10  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX

11  Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

12       In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

13  demanding standard for "deliberate indifference."  Negligence is insufficient.  Farmer, 511 U.S.

14  at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

15  which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

16  violation.  Id. at 836-37.  It not enough that a reasonable person would have known of the risk or

17  that a defendant should have known of the risk.  Id. at 842.  Rather, deliberate indifference is

18  established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to

19  inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal

20  citation omitted) (emphasis added).  Deliberate indifference can be established "by showing (a) a

21  purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

22  caused by the indifference.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations

23  omitted).  A difference of opinion between an inmate and prison medical personnel—or between

24  medical professionals—regarding appropriate medical diagnosis and treatment are not enough to

25  establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

26  Toguchi, 391 F.3d at 1058.  To establish a difference of opinion rises to the level of deliberate

27  indifference, "plaintiff must show that the course of treatment the doctors chose was medically

28  unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

VIII.   Analysis

In order to establish deliberate indifference to a serious medical need, plaintiff must first establish that he has a serious medical need.  Defendants do not challenge whether plaintiff has a serious medical need in their motion for summary judgment.  ECF No. 73.  However, in response to plaintiff's motion for summary judgment, defendants argue that he has not submitted sufficient facts to establish a serious medical need and that he in fact did not have a serious medical need.  ECF No. 80 at 6-8.

Since plaintiff's arguments focus largely on the treatment he received, rather than his condition (ECF No. 74 at 1-12), nearly all of the evidence related to plaintiff's condition comes from defendants (ECF No. 73).  A serious medical need exists where a reasonable doctor finds a condition worthy of treatment, the condition significantly affects an individual's daily activities, or the condition causes chronic and substantial pain.  McGuckin, 974 F.2d at 1059-60.  The undisputed facts show that plaintiff was experiencing some level of chronic pain and that his scoliosis was stable during the relevant period.  The undisputed facts also reflect ongoing attempts to provide plaintiff with treatment and prescriptions for pain medication.  The undisputed facts do not permit determination of the severity of plaintiff's pain or the extent to which plaintiff's daily activities were limited.  These facts, without more, are insufficient to prove that plaintiff's scoliosis and chronic pain rose to the level of a serious medical need.

Because plaintiff has not met his burden with respect to the objective prong of deliberate indifference, he is not entitled to summary judgment.  However, if a jury found plaintiff's testimony credible it could find that plaintiff's condition constituted a serious medical need.  Accordingly, defendants are not entitled to summary judgment on this basis.  The court will therefore turn to the subjective prong of the deliberate indifference analysis.

Defendants have each provided a declaration and both defendants are licensed doctors.  Declaration of J. Soltanian-Zadeh, D.O. ("Soltanian-Zadeh Decl.") (ECF No. 73-4) at ¶¶ 1-2; Declaration of S. Tseng, M.D. ("Tseng Decl.") (ECF No. 73-5) at ¶¶ 1-2.  Soltanian-Zadeh and Tseng both declare that the standard of care for treating back pain like plaintiff's is monitoring the pain, educating the patient on proper stretching and exercising, providing Tylenol or NSAIDs,

13

1    and possibly ordering physical therapy and imaging.  Soltanian-Zadeh Decl. at ¶ 25; Tseng Decl.

2    at ¶ 18.  Defendant Tseng further declares that when the pain does not impair function and the

3    activities of daily living, "it is difficult to justify intervention with significant medication."  Tseng

4    Decl. ¶ 18.  Both defendants declare that the standard of care for treating mild scoliosis is to

5    monitor the pain and progression, recommend exercise to improve function and pain, provide

6    Tylenol or NSAIDs, and potentially order physical therapy.  Soltanian-Zadeh Decl. at ¶ 27; Tseng

7    Decl. at ¶ 20.

8          Plaintiff argues that the defendants fail to identify the applicable standard of care, and

9    assumes that they are referring to California Department of Corrections and Rehabilitation

10   ("CDCR") policy.  ECF No. 77 at 4.  He argues that defendants should have prescribed Robaxin

11   because he had received it in the past and because CDCR policy states it is indicated for flares of

12   pain due to muscle spasm.  ECF No. 74 at 10; ECF No. 77 at 4.  Plaintiff has offered no evidence

13   to establish that he would be qualified to testify as to the appropriate standard of care, and a

14   guideline that outlines when a prescription can be issued does not establish a standard of care.

15   ECF No. 74 at 10, 30; ECF No. 77 at 4, 37.  Moreover, the unanimous decision of the Pain

16   Management Committee to deny Robaxin, opioids, or other medications and to continue

17   prescribing Tylenol or NSAIDs and exercise, supports the standard of care outlined by

18   defendants.  DSUF ¶ 42; ECF No. 73-7 at 22.  With respect to the standard of care for treating

19   plaintiff's scoliosis, he has not established that he would be qualified to testify regarding the

20   standard of care, and offers nothing to establish a different standard than that outlined by

21   defendants.

22         Defendants also declare that Robaxin is an optional form of treatment that can help relieve

23   muscle spasm symptoms and that the body will typically heal itself of the type of muscle spasm

24   plaintiff experienced without Robaxin.  Soltanian-Zadeh Decl. at ¶ 31; Tseng Decl. at ¶ 13.  It is

25   not considered a medically necessary form of treatment.  Id.  Defendant Soltanian-Zadeh also

26   declares that Robaxin has a potential for abuse and must be used very carefully in the prison

27   setting.  Soltanian-Zadeh Decl. at ¶ 31.  Defendants opine that a prescription for Robaxin was not

28   medically indicated at the times Soltanian-Zadeh saw plaintiff because he was not showing signs

14

of a muscle spasm at those appointments. Id.; Tseng Decl. at ¶ 16.  Plaintiff's own statement that

when he saw the physical therapist on January 5, 2011, it was "*well after his spasms were gone*"

(ECF No. 77 at 47 (emphasis in original)), coupled with the physical therapist's note that plaintiff

reported not having a spasms since early November (ECF No. 73-7 at 48) establishes that plaintiff

was not suffering from back spasms during the exams Soltanian-Zadeh conducted between

November 16, 2010, and January 5, 2011, and when he was interviewed by Tseng regarding his

medical grievance on December 17, 2010.  Other than the pain management guidelines, plaintiff's

only evidence that he should have been prescribed Robaxin is that he was given Robaxin when he

experienced muscle spasms in the past.  However, the records indicate that when he received

those prescriptions, he was actively experiencing a muscle spasm.  ECF No. 73-7 at 12, 36.  He

provides no evidence to establish that it was medically unacceptable for defendant Soltanian-

Zadeh to refuse his requests for Robaxin when he was not actively experiencing a muscle spasm

or that it was medically unacceptable for defendant Tseng to not override Soltanian-Zadeh's

course of treatment.  Moreover, even if plaintiff had been experiencing a spasm at the times he

saw Soltanian-Zadeh and Tseng, there is no evidence that a decision to not prescribe Robaxin in

those instances was medically unacceptable.  Plaintiff's evidence regarding pain management

(ECF No. 77 at 37) establishes only that Robaxin can be prescribed in such situations, not that it

must be.

As for the treatment plaintiff received after his visit with the physical therapist through his

last appointment with Soltanian-Zadeh, the evidence shows that plaintiff was not experiencing

muscle spasms at the times he was seen by Soltanian-Zadeh during that period.  ECF No. 73-7 at

18, 20, 52.  This is corroborated by plaintiff's failure to dispute that he was not having spasms

and his statement that because of the length of time between visits, "sometimes the plaintiff did

not have spasms at the exact time he saw medical personnel."  ECF No. 77.  However, even if

plaintiff was experiencing spasms at those appointments, there is no evidence that failure to

prescribe Robaxin was medically unacceptable, especially in light of plaintiff's refusal to accept a

prescription for pain medication and his repeated representations that he was able to exercise

regularly and conduct his daily life activities.  ECF No. 73-7 at 18, 20-22, 48, 52.  As for his

1    complaint that it was "sometimes many months between visits," the appointments with the

2    longest gaps in between were for chronic care and were automatically scheduled at set intervals.

3    DSUF ¶¶ 40, 43, 47.  The record shows that in the instances plaintiff did submit a request for

4    healthcare related to his back pain, he was seen within a month of the request, and there is no

5    evidence that either defendant had anything to do with the scheduling of those appointments.

6    DSUF ¶¶ 19, 20, 24, 46, 47.  Plaintiff has neither alleged nor provided evidence to show that he

7    made any additional requests for treatment between his established chronic care appointments.

8           Plaintiff also argues that "[w]hen a patient tells his doctor numerous times a medication is

9    not working, a qualified doctor will try something else."  ECF No. 77 at 3.  This argument is

10   problematic for plaintiff because he never accepted the medication offered and continuously

11   rejected Soltanian-Zadeh's offers to prescribe him pain medication.  DSUF ¶¶ 21, 24, 41, 44, 48.

12   His medical records show that he had previously been prescribed Naprosyn, both with and

13   without a concurrent prescription for Robaxin, without complaint.  ECF No. 73-7 at 11, 15, 35-

14   37.  On that basis, defendants Soltanian-Zadeh and Tseng had no reason to believe that the course

15   of treatment prescribed (NSAIDs and exercise) would be ineffective to treat plaintiff's pain,

16   especially when he was not experiencing a spasm.

17          Although plaintiff had been previously prescribed Robaxin, "[a] difference of opinion

18   between a physician and the prisoner—or between medical professionals—concerning what

19   medical care is appropriate does not [without more] amount to deliberate indifference."  Snow v.

20   McDaniel, 681 F.3d 978, 987 (9th Cir. 2012), overruled on other grounds, Peralta v. Dillard, 744

21   F.3d 1076, 1083 (9th Cir. 2014).  To establish that a difference of opinion rises to the level of

22   deliberate indifference, a prisoner must show that the defendants' chosen course of treatment was

23   medically unacceptable and in conscious disregard of an excessive risk to plaintiff's health.

24   Jackson, 90 F.3d at 332.  This plaintiff has not done.  Based on the evidence presented by

25   plaintiff, no rational trier of fact could find that the denial of Robaxin was medically unacceptable

26   under the circumstances or otherwise posed an excessive risk to his health.

27          With respect to plaintiff's claim that defendants were deliberately indifferent to his

28   scoliosis, plaintiff's claim that his condition was severe during the relevant time is unsupported

16

1    and clearly contradicted by the evidence.  ECF No. 77 at 2.  The x-ray plaintiff relies on is from

2    April 2014.  Id. at 10.  That is over two years after he was transferred from MCSP.  The x-rays

3    performed on January 29, 2009 (ECF No. 73-7 at 40), December 17, 2010 (id. at 39), and May

4    21, 2012 (ECF No. 77 at 35), which cover the applicable time period, describe plaintiff's scoliosis

5    as mild to moderate and show that it was stable.  There is no evidence of any progression of

6    plaintiff's scoliosis during the time at issue, and defendant Soltanian-Zadeh was treating

7    plaintiff's complaints of low back pain.  The defendants were not deliberately indifferent to

8    plaintiff's scoliosis.

9         There is no evidence that either defendant disregarded plaintiff's medical needs.  Rather,

10   the record shows that plaintiff was seen multiple times regarding his chronic pain and that he was

11   continuously offered pain medication but refused it because he wanted Robaxin.  Despite refusing

12   pain medication, plaintiff was still able to exercise on a regular basis and conduct his daily life

13   activities.  The record also shows that defendant Soltanian-Zadeh ordered an x-ray of plaintiff's

14   spine to check the progression of his scoliosis, which was stable, and referred him to physical

15   therapy.  There is no evidence or allegation that plaintiff submitted requests for healthcare related

16   to his back pain that were ignored, or that either defendant was involved in scheduling visits after

17   a request was submitted.

18        For the reasons set forth above, defendants Soltanian-Zadeh and Tseng were not

19   deliberately indifferent to plaintiff's serious medical needs.  Since defendants did not violate

20   plaintiff's Eighth Amendment rights, the court will not address defendants' arguments that

21   plaintiff's claim for equitable relief is moot, that plaintiff cannot establish sufficient facts to

22   entitle him to punitive damages, and that they are entitled to qualified immunity.

23   IX.    Conclusion

24        IT IS HEREBY ORDERED that defendants' motion to strike (ECF No. 71) is denied as

25   moot.

26        IT IS FURTHER RECOMMENDED, for the reasons set forth above, that:

27        1.  Plaintiff's motion for partial summary judgment (ECF No. 74) be DENIED.

28        2.  Defendants' motion for summary judgment (ECF No. 73) be GRANTED and judgment

17

1    entered for defendants Soltanian-Zadeh and Tseng.

2         These findings and recommendations are submitted to the United States District Judge

3    assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

4    after being served with these findings and recommendations, any party may file written

5    objections with the court, which shall be captioned "Objections to Magistrate Judge's Findings

6    and Recommendations."  A copy of any objections filed with the court shall also be served on all

7    parties.  The parties are advised that failure to file objections within the specified time may waive

8    the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9    DATED: March 27, 2015

10                                                          _____
                                                           ALLISON CLAIRE
11                                                         UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28